# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 1:23-md-03083-ADB-PGL |

This Document Relates To:

1:23-cv-12478
1:23-cv-12281
1:23-cv-12561
1:24-cv-11523
1:23-cv-12226
1:23-cv-12273

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

    I.     History of the Litigation................................................................................. 2

           A.     Procedural Posture. .................................................................... 4

           B.     Negotiation of the Proposed Settlement. .................................. 5

    II.    The Settlement Provides Significant Benefits to the Settlement
         Class. ........................................................................................................... 6

           A.     The Proposed Settlement Benefits Plan. ................................... 6

           B.     The Proposed Notice Plan. ........................................................ 7

           C.     Settlement Class Representative Service Awards, and
                  Attorneys' Fees and Expenses. .................................................. 8

           D.     Dismissal and Release of Claims. .............................................. 9

ARGUMENT ....................................................................................................................... 9

    I.     The Court Should Preliminarily Approve the Proposed Class
         Action Settlement......................................................................................... 9

           A.     The Proposed Settlement is Fair, Reasonable, and
                  Adequate. ................................................................................. 10

           B.     The Settlement Satisfies the Preliminary Approval Factors. ................... 13

                  i.     The Proposed Settlement is the Product of Good
                        Faith, Informed, Arm's-Length Negotiations ............................. 13

                  ii.    There Was Sufficient Informal Discovery to Inform
                        Resolution. .................................................................................. 14

                  iii.    The Proponents of the Settlement Are Highly
                        Experienced in Data Breach Litigation ....................................... 15

                  iv.    Settlement Class Objections. ...................................................... 16

    II.    The Proposed Settlement Benefits Plan is Fair, Reasonable, and
         Adequate. ................................................................................................... 16

III.    The Proposed Settlement Class Meets the Requirements for Class
        Certification. ................................................................................................ 17

        A.      The Requirements of Rule 23(a) Are Satisfied. ...................................... 18

                i.      Numerosity. ................................................................................ 18

                ii.     Commonality. ............................................................................. 19

                iii.    Typicality. .................................................................................. 20

                iv.     Adequacy. .................................................................................. 21

        B.      The Settlement Class Meets the Requirements of Rule
                23(b). ......................................................................................................... 22

                i.      Common Issues Predominate Over Individual
                        Issues. ......................................................................................... 22

                ii.     A Class Action is a Superior Device for
                        Adjudicating the Nuance Actions. ............................................. 24

IV.     The Court Should Approve the Proposed Notice Plan for Direct
        Notice to Be Issued to the Settlement Class. ..................................................... 25

V.      The Court Should Set the Below Settlement Deadlines ..................................... 27

CONCLUSION ............................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abubaker v. Dominion Dental USA, Inc.*,
  2021 WL 6750844 (E.D. Va. Nov. 19, 2021) ........................................................ 21

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................ 18, 22

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ............................................................................................. 22

*Attias v. CareFirst, Inc.*,
  346 F.R.D. 1 (D.D.C. 2024) ................................................................................. 17

*Bezdek v. Vibram USA Inc.*,
  79 F. Supp. 3d 324 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015) ...................... 20

*Bussie v. Allmerica Fin. Corp.*,
  50 F. Supp. 2d 59 (D. Mass. 1999) ...................................................................... 15

*Corra v. ACTS Ret. Servs., Inc.*
  2024 WL 22075 (E.D. Pa. Jan. 2, 2024) .............................................................. 24

*Engel v. Scully & Scully, Inc.*,
  279 F.R.D. 117 (S.D.N.Y. 2011) .......................................................................... 19

*Fid. & Guar. Ins. Co. v. Star Equip. Corp.*,
  541 F.3d 1 (1st Cir. 2008) ...................................................................................... 9

*Fox v. Iowa Health Sys.*,
  2021 WL 826741 (W.D. Wis. Mar. 4, 2021) ........................................................ 11

*Green-Cooper v. Brinker Int'l, Inc.*,
  73 F.4th 883 (11th Cir. 2023) ......................................................................... 23, 24

*Harbour v. California Health & Wellness Plan*,
  2024 WL 171192 (N.D. Cal. Jan. 16, 2024) ........................................................ 12

*Hill v. State St. Corp.*,
  2015 WL 127728 (D. Mass. Jan. 8, 2015) ............................................... 10, 16, 26

*Hochstadt v. Bos. Sci. Corp.*,
  708 F. Supp. 2d 95 (D. Mass. 2010) ............................................................... 14, 16

011175-35/3249822 V1

*In re Brinker Data Incident Litig.*,
    2021 WL 140550 (M.D. Fla. Apr. 14, 2021) ........................................................... 23

*In re Cap. One Consumer Data Sec. Breach Litig.*,
    2022 WL 18107626 (E.D. Va. Sept. 13, 2022) ................................................... 12, 25

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*,
    325 F.R.D. 529 (D. Mass. 2017) ............................................................................. 23

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    216 F.R.D. 197 (D. Me. 2003) ........................................................................... 26, 27

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
    2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) ........................................................ 26

*In re Forefront Data Breach Litig.*,
    2023 WL 6215366 (E.D. Wis. Mar. 22, 2023) ....................................................... 12

*In re Lupron Mktg. & Sales Pracs. Litig.*,
    228 F.R.D. 75 (D. Mass. 2005) ................................................................................. 9

*In re Lupron Mktg. & Sales Practices Litig.*,
    345 F. Supp. 2d 135 (D. Mass. 2004) ................................................................. 13, 16,

*In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*,
    270 F.R.D. 45 (D. Mass. 2010) ................................................................. 13, 15, 20, 21

*In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*,
    341 F.R.D. 128 (D. Md. 2022) ................................................................................. 17

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
    522 F.3d 6 (1st Cir. 2008) ....................................................................................... 19

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
    2017 WL 4621777 (D. Mass. Oct. 16, 2017) ..................................................... 22, 24

*In Re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
    2018 WL 11293802 (D. Mass. Mar. 12, 2018) ....................................................... 10

*Jean-Pierre v. J&L Cable TV Servs., Inc.*,
    538 F. Supp. 3d 208 (D. Mass. 2021) ...................................................................... 17

*Lapan v. Dick's Sporting Goods, Inc.*,
    2015 WL 8665204 (D. Mass. Dec. 11, 2015) .......................................................... 26

-iv-

*Meaden v. HarborOne Bank*,
   2023 WL 3529762 (D. Mass. May 18, 2023) ........................................................ 9, 19

*Nat'l Ass'n of Deaf v. Massachusetts Inst. of Tech.*,
   2020 WL 1495903 (D. Mass. Mar. 27, 2020) ........................................................ 13

*New England Biolabs, Inc. v. Miller*,
   2022 WL 20583575 (D. Mass. Oct. 26, 2022) .................................................... 13, 16

*Piro v. Exergen Corp.*,
   2016 WL 1255630 (D. Mass. Mar. 29, 2016) ........................................................ 26

*Roberts v. Source for Pub. Data*,
   2009 WL 3837502 (W.D. Mo. Nov. 17, 2009) ...................................................... 25

*Rolland v. Cellucci*,
   191 F.R.D. 3 (D. Mass. 2000) ................................................................................ 15

*Savidge v. Pharm-Save, Inc.*,
   2024 WL 1366832 (W.D. Ky. Mar. 29, 2024) ...................................................... 17

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ................................................................................................ 23

*Wal-Mart Stores v. Dukes*,
   564 U.S. 338 (2011) ............................................................................................ 19, 23

## Rules

Fed. R. Civ. P. 23 ......................................................................................................... 18

Fed. R. Civ. P. 23(a) .................................................................................................... 18

Fed. R. Civ. P. 23(a)(1) ................................................................................................ 18

Fed. R. Civ. P. 23(a)(2) ........................................................................................... 18, 19

Fed. R. Civ. P. 23(a)(3) ....................................................................................... 18, 20, 21

Fed. R. Civ. P. 23(a)(4) ................................................................................... 16, 18, 21, 22

Fed. R. Civ. P. 23(b) ..................................................................................................18, 22

Fed. R. Civ. P. 23(b)(3) .......................................................................................... 18, 22, 23

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................. 25, 26, 27

Fed. R. Civ. P. 23(e) ....................................................................................... 1, 9

Fed. R. Civ. P. 23(g) ........................................................................................ 16

## INTRODUCTION

Plaintiffs,[1] individually and on behalf of all others similarly situated, and pursuant to Rule 23(e), respectfully move this Court for preliminary approval of the proposed Class Action Settlement Agreement and Release ("Settlement" or "SAR") with Defendant Nuance Communications, Inc. ("Nuance" or "Defendant").[2] Preliminary approval should be granted because the Settlement provides substantial relief for the Settlement Class, including the payment of $8.5 million by Nuance into a non-reversionary Settlement Fund to: (1) be allocated to the Settlement Class according to the proposed Settlement Benefits Plan[3]; (2) pay for attorneys' fees and expenses and Service Awards to the Settlement Class Representatives, as approved by the Court; and (3) cover the costs of settlement administration and the issuance of notice. According to the proposed Settlement Benefits Plan, the Net Settlement Fund (after deducting Court-approved attorneys' fees and expenses, any Court-approved Service Awards, and notice and administration costs) will be used to pay for Settlement Class Members' claims for two (2) years of credit monitoring and identity theft protection, and either: (1) reimbursement of ordinary losses up to $2,500.00 (including lost time of up to four (4) hours at $25.00 per hour) and reimbursement of extraordinary losses up to $10,000.00; or (2) an alternative cash payment of $100.00.

As set forth below, the Settlement is fair, reasonable, and adequate as it provides immediate and guaranteed relief in the face of difficult, extensive, and expensive litigation that poses a significant risk that Plaintiffs and the Settlement Class might recover nothing from Nuance should

---

[1] Plaintiffs are Denise Peel, Kristen Eyester, Juan Salas, Patricia Callahan, Kayla Farrar, and Justin Okeke ("Plaintiffs" or "Settlement Class Representatives").

[2] Unless otherwise defined herein, all capitalized terms have the same definitions as those set forth in the proposed Class Action Settlement Agreement and Release, which is attached as Exhibit 1 to the Lynch Declaration in Support of Preliminary Approval ("Lynch Decl.") filed concurrently herewith.

[3] The proposed Settlement Benefits Plan is attached as Exhibit D to the Settlement Agreement.

litigation continue. The Settlement is also the result of extensive and well-informed negotiations among counsel with extensive experience in data breach litigation, facilitated by an experienced mediator, Hon. Diane M. Welsh (Ret.). For these reasons, Plaintiffs respectfully request that the Court preliminarily approve the Settlement, certify the Settlement Class, approve the Notice Plan, direct the Settlement Administrator to issue notice accordingly, and set Settlement-related deadlines.

## BACKGROUND

### I.    History of the Litigation.

Plaintiffs' claims against Nuance arise out of a security incident stemming from a vulnerability in MOVEit Transfer. *See* Compl. ¶ 62; ECF No. 908.[4] MOVEit Transfer is a subscription-based managed file transfer application developed and licensed by Progress Software Corporation ("Progress") and used by numerous commercial and government entities, including Nuance, to transfer large data files. Compl. ¶ 18; ECF No. 908 ¶¶ 11–12. Between May 27, 2023 and May 31, 2023, CL0P Ransomware Gang, exploited a vulnerability in the MOVEit Transfer application. *See* ECF No. 908 ¶¶ 90–155. CL0P used the MOVEit vulnerability to escalate user privileges, gain unauthorized access to customers' MOVEit Transfer environments, and access, copy, and exfiltrate the sensitive information stored therein (the "Security Incident"). *See* ECF No. 908 ¶¶ 96–153. Shortly after exploiting the MOVEit Transfer vulnerability, CL0P threatened to name and publish the leaked data of any organizations that did not respond to its ransom demands. *See* ECF No. 908 ¶¶ 175–179, 207–208.

---

[4] Citations to "Compl." are citations to the *Okeke* Complaint. *See Okeke v. Progress Software Corp., et al.*, Case No. 1:24-cv-11523-ADB (D. Mass.), ECF No. 1.

Nuance is a Massachusetts-based software technology corporation that provides clinical documentation services to healthcare professions, including dictation services, diagnostic analytics, document capture, speech recognition, and other software solutions. Compl. ¶ 12. Nuance's software technologies are used by hospitals and healthcare organizations worldwide. *Id.* In order to provide its software technologies to healthcare professionals, Nuance uses MOVEit Transfer to exchange individuals' Personal Information. *Id.* ¶ 18. Plaintiffs and Class Members are all patients of healthcare providers whose Personal Information was exchanged between healthcare providers and Nuance. *Id.* ¶¶ 14–15.

On or about May 31, 2023, Progress informed Nuance of a recently discovered vulnerability in MOVEit Transfer. *Id.* ¶ 65. Specifically, Progress warned of an unauthenticated SQL vulnerability that could allow unauthorized actors to escalate user privileges and access Nuance's MOVEit Transfer environment. Nuance immediately took its instance of MOVEit offline and installed patches to fix the vulnerability promptly as they were released. Thereafter, Nuance conducted an investigation and concluded that the Personal Information of approximately 1.225 million people had been taken from Nuance's MOVEit Transfer environment due to an exploit of the MOVEit vulnerability. On or about September 22, 2023, Nuance began notifying Plaintiffs and Class Members of the Security Incident. *Id.* ¶ 67.

Although the Security Incident involved an exploit of the MOVEit Transfer application, Plaintiffs allege that Nuance's negligence contributed to the breach and theft of Plaintiffs' and Settlement Class Members' Personal Information. Compl. ¶¶ 50, 52–56; ECF No. 908 ¶¶ 427–457. Nuance denies these allegations and any fault or liability in this matter. Among other defenses, Nuance argues that it cannot have been negligent in using a trusted software product used by thousands of businesses and government entities worldwide. Plaintiffs further allege that Progress

should have warned users, including Nuance, that MOVEit Transfer was "not set it and forget it" with respect to security, and that additional steps should have been taken to secure the data transferred with MOVEit Transfer. ECF No. 908 ¶¶ 458–466. Plaintiffs claim Nuance could have prevented or mitigated the Security Incident by implementing reasonable data security measures to secure its MOVEit Transfer environment. *See* Compl. ¶¶ 50, 52–56; ECF No. 908 ¶¶ 427–431. Nuance denies these allegations. Consequently, Plaintiffs sued a combination of Nuance and Progress for the alleged harm caused by the theft of their Personal Information.

### A.     Procedural Posture.

Following Nuance's distribution of notice letters in September 2023, Plaintiffs filed suit against Nuance and/or Progress in *Callahan v. Nuance Comms., Inc.*, No. 23-cv-12478 (D. Mass.); *Eyester v. Nuance Comms., Inc.*, No. 23-cv-12281 (D. Mass.); *Farrar v. Nuance Comms., Inc.*, No. 23-cv-v 12561 (D. Mass.); *Markley v. Nuance Comms., Inc.*, No. 23-cv-13079 (D. Mass.); *Okeke v. Progress Software Corp.*, No. 24-cv-11523 (D. Mass.); *Peel v. Nuance Comms., Inc.*, No. 23-cv-12226 (D. Mass.); and *Salas v. Nuance Comms., Inc.*, No. 23-cv-12273 (D. Mass.). Each of these actions, filed in the District of Massachusetts, was assigned or reassigned to Judge Allison D. Burroughs for coordination as part of this multi-district litigation pertaining to the MOVEit Security Incident ("MDL").[5]

On July 23, 2024, all defendants in the MDL filed an omnibus motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) asserting that the underlying actions should be dismissed for lack of Article III standing. ECF No. 1114. After briefing and argument by the parties, on December 12, 2024, the Court issued an opinion denying the defendants' omnibus motion to dismiss in large part

---

[5] Two additional actions were filed but were voluntarily dismissed without prejudice. *See Johnson v. Nuance Commcn's, Inc.*, No. 23-cv-12265 (D. Mass.) and *Moore v. Nuance Commcn's, Inc.*, No. 23-cv-13079 (D. Mass.).

finding that "(most) Plaintiffs have standing to pursue their claims." ECF No. 1304. During the pendency of the omnibus motion to dismiss briefing, Plaintiffs' Co-Lead Counsel and Defendants' Liaison Counsel negotiated a proposed structure for litigating claims asserted in the MDL, with the Court ordering Plaintiffs to file a consolidated bellwether complaint against Progress and certain other defendants. Plaintiffs later filed a bellwether complaint against Progress and other representative defendants. ECF No. 1332. Nuance was not named as a bellwether defendant.

### B.    Negotiation of the Proposed Settlement.

During an early part of the bellwether phase of this MDL, Co-Lead Counsel and the Settlement Committee, and counsel for Nuance agreed to mediate the claims asserted against Nuance to attempt to resolve Nuance's alleged liability for the Security Incident. *See* Lynch Decl., ¶ 15. Specifically, the Parties agreed to mediate with Hon. Diane M. Welsh (Ret.), who mediated several other cases in the MDL. *Id*. ¶ 16. Prior to mediation, the Parties engaged in informal discovery, wherein Nuance provided information about the Security Incident, including information concerning Nuance's use of MOVEit Transfer, and the types of information impacted in the Security Incident, and the class size. *Id.* ¶ 17. Plaintiffs' Settlement Committee was therefore well informed regarding the facts of the case, and the strengths and weaknesses of Plaintiffs' claims and Nuance's defenses leading into the mediation. *See id.* ¶ 17.

On January 28, 2025, the Parties engaged in a full-day mediation with Judge Welsh. *See id*. ¶ 18. These good-faith and hard-fought negotiations resulted in an agreement in principle. *Id*. Following the mediation, the Parties engaged in a series of further arm's-length discussions, during which the Parties negotiated, drafted, and finalized the terms of the Settlement Agreement. *Id*. ¶ 19. The Settlement Agreement was fully executed by the Parties as of July 25, 2025.

II.    **The Settlement Provides Significant Benefits to the Settlement Class.**

Under the Settlement Agreement, Nuance has agreed to pay $8.5 million into a non-reversionary Settlement Fund to resolve Plaintiffs' and Settlement Class Members' claims against the Defendant Released Parties. SAR § 3.1. The Settlement Fund will pay for: (1) costs of Notice and Settlement Administration; (2) any Court-approved Service Awards for the Settlement Class Representatives; (3) any Court-approved attorneys' fees and expenses; and (4) Settlement Payments for the Settlement Class pursuant to the Settlement and the proposed Settlement Benefits Plan, as approved by the Court. *Id.* § 3.3.

A.    **The Proposed Settlement Benefits Plan.**

The Settlement provides relief to those whose Personal Information, was allegedly compromised as a result of Nuance's use of MOVEit Transfer during the Security Incident. SAR § 1.35 (defining the Settlement Class as "all persons in the United States whose Personal Information was included in the files affected by the Security Incident"); *see also* SAR § 1.31 (defining the Security Incident as "the exploitation of the MOVEit Transfer Software vulnerability on or around May 2023 that impacted thousands of entities that used the software, including Nuance, but, for purposes of this Agreement, only to the extent it impacted Nuance and Nuance Clients").

The Settlement requires that the Net Settlement Fund (after deducting for notice and administration costs, the Settlement Class Representatives' Service Awards, if any, and attorneys' fees and expenses, as awarded and approved by the Court) be distributed via the Settlement Benefits Plan proposed by Class Counsel and the Settlement Committee. *Id.* at § 3.3. Pursuant to the Settlement Benefits Plan, Settlement Class Members can file claims for two (2) years of credit monitoring and identity theft protection, and either (1) reimbursement of ordinary losses up to

-6-

$2,500.00 (including lost time of up to four (4) hours at $25.00 per hour) and reimbursement of extraordinary losses up to $10,000.00; or (2) an alternative cash payment of $100.00 (subject to *pro rata* reduction or increase based on total claim submission). *See* SAR Ex. D § 2.

To the extent the Net Settlement Fund is not exhausted by the payment of Approved Claims, the value of the Alternative Cash Payments will be increased *pro rata*, up to $1,000.00, or until the Net Settlement Fund is exhausted. *See* SAR Ex. D § 4. If the total value of Approved Claims exceeds the value of the Net Settlement Fund, the value of the Alternative Cash Payments will be decreased *pro rata* to the highest amount that will allow the Approved Claims to be paid using the Net Settlement Fund. *Id.* If any funds remain one hundred and eighty (180) days after the Effective Date, any monies remaining in the Net Settlement Fund will be used to extend all Approved Claims for credit monitoring and identity theft protection services for as long as possible until the Net Settlement Fund is completely exhausted. *Id.*

### B.    The Proposed Notice Plan.

The Settlement proposes a Notice Plan requiring direct notice to be emailed or, alternatively, mailed to each Settlement Class Member. The Settlement Administrator, A.B. Data, Ltd. ("A.B. Data"), will be responsible for issuing notice according to the Settlement's terms. Declaration of Justin Parks ("A.B. Data Decl."), ¶ 2 (submitted concurrently with this brief).

Under the Settlement, Nuance will provide a list of Settlement Class Members within ten (10) days after the entry of an order preliminarily approving the Settlement. SAR, § 9.1. A.B. Data will undergo efforts to update the Settlement Class list to ensure addresses are accurate. *Id.* at § 9.2(b). A.B. Data will send notice via email where possible and via U.S. mail where no email has been provided. *Id.* at § 9.2(a). The notice will include information on: (1) the allegations asserted in the Action; (2) details of the Settlement's benefits; (3) how to file a claim; (4) how

Settlement Class Members can exclude themselves from the Settlement or object to the Settlement; (5) how to access the Settlement Website; and (6) contact information to learn more about the Settlement or answer any questions about filing a claim, submitting an objection, or opting out. Additionally, A.B. Data will create a Settlement Website that includes the long form notice and other relevant case documents and send Settlement Class Members a reminder notice by email before the end of the Claims Period. *Id.* at §§ 9.2(c), 9.3.

The Notice Plan is consistent with other effective, court-approved settlement notice programs, including those involving other data breaches, and is the best notice practicable. Under the Notice Plan, the parties expect virtually all Settlement Class Members to receive direct notice and will engage in other means if it becomes apparent that some Settlement Class Members have not received notice. *See id.* at § 9.2(a). Based on its extensive experience administering class action settlements, A.B. Data believes the proposed notice is best practicable under the circumstances. A.B. Data. Decl. ¶ 9.

### C.    Settlement Class Representative Service Awards, and Attorneys' Fees and Expenses.

Under the Settlement, Co-Lead Counsel may move the Court for an award of attorneys' fees and expenses expressed as a percentage of the Settlement Fund and for payment of Service Awards to the Settlement Class Representatives up to $2,500.00. SAR at §§ 6.1, 6.2. Any amount awarded by the Court for the Service Awards and attorneys' fees and expenses will be paid from the Settlement Fund. *Id.* at §§ 7.6, 6.2. The Settlement is not contingent on the Court's approval of the payment of any attorneys' fees or expenses or approval of the Service Award. *Id.* at §§ 6.1(a), 6.2(a).

**D.      Dismissal and Release of Claims.**

Upon the Effective Date of the Settlement, the Plaintiff Released Parties shall be deemed to have released any and all liabilities, rights, claims, actions, causes of action, damages, penalties, costs, attorneys' fees, losses or demands, whether known or unknown, liquidated or unliquidated, existing or potential, suspected or unsuspected, legal, statutory, or equitable, based on contract, tort, or any other theory, that result from, arise out of, are based upon, or relate to the conduct, omissions, duties, or matters that were or reasonably could have been asserted against Defendant Released Parties related to the Security Incident. SAR §§ 1.30, 14.1. However, the Settlement does not release claim against Progress. SAR § 1.30. These releases are described in the proposed Long Form Notice. A.B. Data Decl., ¶ 16; SAR Ex. E–G.

## ARGUMENT

**I.      The Court Should Preliminarily Approve the Proposed Class Action Settlement.**

"Settlement agreements enjoy great favor with the courts as a preferred alternative to costly, time-consuming litigation." *Fid. & Guar. Ins. Co. v. Star Equip. Corp.*, 541 F.3d 1, 5 (1st Cir. 2008) (internal citation and quotations omitted); *see also In re Lupron Mktg. & Sales Pracs. Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) ("[T]he law favors class action settlements."). Federal Rule of Civil Procedure 23(e) provides that a proposed settlement in a class action must be approved by the court. Fed. R. Civ. P. 23(e). "The approval of a class-action settlement agreement is a 'two-step process, which first requires the court to make a preliminary determination regarding the fairness, reasonableness, and adequacy of the settlement terms.'" *Meaden v. HarborOne Bank*, No. 23-CV-10467-AK, 2023 WL 3529762, at *1 (D. Mass. May 18, 2023) (citation omitted). "The second step in the settlement approval process requires a fairness hearing, after which the court may give final approval of the proposed settlement agreement." *Id.* (citation omitted). In a court's

-9-

preliminary evaluation of a proposed settlement, "the Court determines only whether the settlement has 'obvious deficiencies' or whether 'it is in the range of fair, reasonable, and adequate.'" *In Re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-MD-2503-DJC, 2018 WL 11293802, at *1 (D. Mass. Mar. 12, 2018) (citation omitted).

### A. The Proposed Settlement is Fair, Reasonable, and Adequate.

To preliminarily approve a class action settlement, the settlement must be "in the range of fair, reasonable, and adequate." *Solodyn*, 2018 WL 11293802, at *1. When evaluating whether the settlement is within the range of reasonableness, courts consider the settlement benefits "in light of the possible recovery in the litigation and the risks of litigation." *Hill v. State St. Corp.*, No. 09-cv-12146, 2015 WL 127728, at *10 (D. Mass. Jan. 8, 2015). The settlement need not represent "the best possible recovery[,]" but the recovery must be weighed against "the strengths and weaknesses of the case" given "the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment[.]" *Id.*

Here, the recovery is within the range of reasonableness given the complexities and risks of continued litigation, including the uncertainty of recovery against Nuance. The Security Incident resulted from the MOVEit vulnerability, which impacted hundreds of businesses and millions of individuals. Plaintiffs contend that, had Nuance implemented reasonable data security measures, the breach may have been avoided. Nuance may convince a factfinder, however, that the scope of the data breach stemming from the MOVEit vulnerability suggests that the vulnerability could not reasonably have been safeguarded against or that the blame lies with Progress for defectively designing MOVEit Transfer with the vulnerability.

Nuance's liability is further complicated because Defendant would argue it owed no duty to Plaintiff and the Settlement Class because it lacked a direct relationship or contractual privity

with them. Nuance operated as a service provider in the healthcare sector and received Plaintiffs'

and Settlement Class Members' Personal Information from downstream data custodians, including

healthcare providers from across the country. If litigation continues, Nuance would likely argue

that this lack of a direct relationship or privity impacts Defendant's duty to the Settlement Class

or the apportionment of duty between Progress and Nuance which, if successful, may impact

Plaintiffs' and the Settlement Class's ability to recover from Nuance.

Plaintiffs also face risks inherent in all data breach actions. Plaintiffs would need to prevail

on both liability and class certification to ensure their claims proceeded on a class-wide basis and

to afford an opportunity for the Settlement Class to obtain any relief. *Fox v. Iowa Health Sys.*, No.

3:18-cv-00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is

evolving; there is no guarantee of the ultimate result."). Both parties would likely face significant

risk and costs from an expert battle concerning whether Nuance's data security was unreasonable

and competing expert testimony on the viability of any class-wide damages models. In the face of

a vigorous defense from Nuance, it is uncertain whether Plaintiffs would prevail on critical issues

such as establishing Nuance's duty and breach of duty, Plaintiffs' injuries as a result of Nuance's

breach, and the viability of class certification. If Plaintiffs did not prevail on any of these issues,

they faced the risk of recovering nothing for themselves and the Settlement Class.

Given the risks and expense of continued litigation, including that Plaintiffs and the

Settlement Class might receive nothing, the Settlement provides relief and protections for the

Settlement Class now and ensures some recovery against Nuance without releasing the remaining

claims against Progress. The Settlement is designed to provide relief for the harms and potential

harms caused by the Security Incident—time and expenses spent responding to the breach,

reimbursement for any actual misuse of data, and measures to prevent the future risk that the stolen

data will be used for fraud or identity theft. The Settlement provides relief for those data breach injuries by providing benefits for (1) reimbursement of ordinary out-of-pocket losses (including lost time spent responding to the Security Incident) due to the misuse of data or efforts to prevent the misuse of data; (2) reimbursement of extraordinary losses resulting from the misuse of data; (3) an alternative cash payment; and (4) preventing or mitigating the risk of future harm. The Settlement is therefore well within the range of reasonableness, warranting notice to the Settlement Class and an opportunity to object or opt-out.

Courts frequently approve class action settlements in data breach actions like this one. *See, e.g.*, *Harbour v. California Health & Wellness Plan*, No. 5:21-CV-03322-EJD, 2024 WL 171192, at *2 (N.D. Cal. Jan. 16, 2024) (granting final approval to data breach settlement that provided credit monitoring, a cash payment, or a documented loss payment); *In re Forefront Data Breach Litig.*, No. 21-CV-887, 2023 WL 6215366, at *2 (E.D. Wis. Mar. 22, 2023) (granting final approval to data breach settlement that provided credit monitoring, and reimbursement for documented losses and lost time); *In re Cap. One Consumer Data Sec. Breach Litig.*, No. 119MD2915AJTJFA, 2022 WL 18107626, at *12 (E.D. Va. Sept. 13, 2022) (approving proposed allocation plan that allowed class members to submit claims for out-of-pocket losses, lost time, and credit monitoring services); *In re MOVEit Customer Data Sec. Breach Litig.*, No. 1:23-md-03083 (D. Mass.) (ECF No. 1432 & 1485) (granting final approval to settlement agreements against two of several relevant defendants that provided credit monitoring, and reimbursement for documented losses and lost time).

Given the reasonableness of the Settlement when weighed against the risks of continued litigation, the Settlement is within the range of reasonableness warranting preliminary approval.

### B.    The Settlement Satisfies the Preliminary Approval Factors.

Courts in the First Circuit look to four factors to determine whether a proposed Settlement is entitled to a presumption of fairness. These guidelines include whether: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270 F.R.D. 45, 62 (D. Mass. 2010) (quoting *In re Lupron*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004)). The fourth factor is more often relevant for purposes of final approval, after notice has been issued and class members have been given an opportunity to object to the proposed settlement. *In re Lupron*, 345 F. Supp. 2d at 137.

### i.    The Proposed Settlement is the Product of Good Faith, Informed, Arm's-Length Negotiations

The first factor considers whether the proposed Settlement "is the result of serious, informed arm's length negotiations" entitling the Settlement to a presumption of reasonableness. *New England Biolabs, Inc. v. Miller*, No. 1:20-CV-11234-RGS, 2022 WL 20583575, at *3 (D. Mass. Oct. 26, 2022). A settlement negotiated at arm's length is typically presumed reasonable. *See Nat'l Ass'n of Deaf v. Massachusetts Inst. of Tech.*, No. 3:15-cv-30024, 2020 WL 1495903, at *4 (D. Mass. Mar. 27, 2020) ("A settlement is presumed to be reasonable when it is achieved by arm's length negotiations conducted by experienced counsel.").

Here, the presumption of reasonableness applies because the Settlement was the result of arm's-length negotiation, including formal mediation with an experienced mediator, Judge Welsh, and after sufficient information had been exchanged to ensure the parties could reasonably assess the Settlement. Lynch Decl. ¶¶ 15–17, 41. On January 28, 2025, the parties participated in settlement discussions mediated by Judge Welsh during an all-day mediation. *Id.* ¶ 18. Counsel for Nuance and members of the Plaintiffs' Settlement Committee who participated in the mediation

are knowledgeable and respected litigators with significant experience in complex cases, including data breach and data privacy litigation. *See id.* ¶¶ 3–4. Prior to mediation, the parties also exchanged extensive confidential information related to the Security Incident Breach, and the types of information involved. *Id.* ¶¶ 17, 41.

The parties were therefore fully informed and capable of assessing the reasonableness of any settlement. The parties engaged in a lengthy and hard-fought mediation before Judge Welsh. *Id.* ¶¶ 16, 18. The mediation was successful, resulting in an agreement in principle. *Id.* ¶ 18. Thereafter, the parties continued to finalize the terms of the Settlement and entered into the finalized Settlement Agreement on or about July 25, 2025. *Id.* ¶ 19.

### ii.    There Was Sufficient Informal Discovery to Inform Resolution.

In assessing the sufficiency and meaningfulness of discovery, the issue is not whether discovery has been completed, but rather that sufficient discovery has been conducted for the parties to make an intelligent judgment about settlement. *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 107 (D. Mass. 2010). Here, the parties reached the proposed Settlement after engaging in a sufficiently adequate amount of informal discovery via the mediation process. Lynch Decl. ¶ 17. The information uncovered and reviewed by Co-Lead Counsel and Settlement Committee provided them with the information needed to objectively evaluate the strengths and weaknesses of Plaintiffs' and Settlement Class Members' claims. *Id.* ¶¶ 17, 41.

Additionally, Nuance's Security Incident is part of the larger Security Incident that spawned hundreds of cases consolidated in the MDL. Co-Lead Counsel, who the Court appointed to manage the related actions in the MDL, has been informed by their investigations and litigation of those centralized actions. *Id.* ¶ 5. Co-Lead Counsel's and the Settlement Committee's experience representing plaintiffs and other data breach victims in the MDL provided further knowledge and

background to guide their assessment of the reasonableness of the Settlement. *See, e.g.*, *id.* ¶¶ 3–4, 41–42.

The information received from Nuance and obtained in overseeing plaintiffs in the MDL, along with Settlement Committee's prolific experience litigating data breach actions, provided counsel with sufficient information to evaluate the strengths and weaknesses of the claims and defenses in this case, and to assess the reasonableness of the Settlement. *Id.* ¶¶ 17, 41. Based on the information available to both parties, their respective experience in data breach litigation generally, and their experience in the MDL specifically, both parties believe the Settlement to be fair, reasonable, and adequate. *Id.* ¶¶ 41–44. Because the parties exchanged sufficient information to adequately inform them "about their respective litigation positions," this factor weighs in favor of preliminary approval. *M3 Power*, 270 F.R.D. at 63.

### iii.    The Proponents of the Settlement Are Highly Experienced in Data Breach Litigation

The third factor courts evaluate in determining whether to preliminarily approve a class action settlement is the opinion of experienced counsel. *M3 Power*, 270 F.R.D. at 62. Courts give significant weight to the judgment of experienced counsel who have engaged in arm's-length settlement negotiations. *See, e.g.*, *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) ("The Court's fairness determination also reflects the weight it has placed on the judgment of the parties' respective counsel, who are experienced attorneys and have represented to the Court that they believe the settlement provides to the Class relief that is fair, reasonable and adequate.").

Here, Co-Lead Counsel and the Settlement Committee appointed by the Court are experienced class action litigators with significant experience litigating data breach actions. Lynch Decl. ¶¶ 3–5. Courts have recognized Co-Lead Counsel's and the Settlement Committee's experience in this area of law and have repeatedly adjudged Co-Lead Counsel and the Settlement Committee adequate under Rules 23(a)(4) and 23(g). *Id.* Co-Lead Counsel and the Settlement Committee have demonstrated throughout this litigation that they are well-versed in data breach and privacy law, and they have prosecuted this case and others in the MDL with vigor and commitment.

The parties have considered the reasonableness of the Settlement in light of the risk of continued litigation, the relevant facts and law, and their experience litigating data breach actions. *Id*. ¶¶ 41–42. Counsel for both parties have concluded the Settlement is fair, reasonable, and adequate. This factor, therefore, supports preliminary approval.

### iv.  Settlement Class Objections.

The fourth factor considers the Plaintiffs' and the Class's reaction to the Settlement. This factor is more relevant at final approval after notice has been issued and the Class has been given an opportunity to object to the proposed settlement. *In re Lupron*, 345 F. Supp. 2d at 137.

## II.  The Proposed Settlement Benefits Plan is Fair, Reasonable, and Adequate.

A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, adequate, and reasonable. *Bos. Sci. Corp.*, 708 F. Supp. at 109 (citation omitted). "A plan of allocation is fair and reasonable as long as it has a 'reasonable, rational basis.'" *New England Biolabs*, 2022 WL 20583575, at *4. "A reasonable plan of allocation need not necessarily treat all class members equally, but may allocate funds based on the extent of class members' injuries and consider the relative strength and values of different categories of claims." *Hill*, 2015 WL 127728,

-16-

at *11 (internal citations and quotations omitted). "In determining whether a plan of allocation is fair and reasonable, courts give great weight to the opinion of experienced counsel." *Id.*

Here, the proposed Settlement Benefits Plan meets this standard. It provides all Settlement Class Members with the same opportunity to file claims for two (2) years of credit monitoring and identity theft protection, and either (1) reimbursement of ordinary losses up to $2,500.00 (including lost time of up to four (4) hours at $25.00 per hour) and reimbursement of extraordinary losses up to $10,000.00; or (2) an alternative cash payment of $100.00 (subject to *pro rata* reduction or increase based on total claim submission). The Settlement Benefits Plan was designed to provide equal treatment to those who did not incur out of pocket losses while allowing for individualized compensation to Settlement Class Members who incurred expenses as a result of the Security Incident. The proposed Settlement Benefits Plan is similar to other court-approved allocation plans in other data breach cases. *See* Argument I.A. For these reasons, the proposed Settlement Benefits Plan is fair, reasonable, and adequate and should be preliminarily approved.

**III.    The Proposed Settlement Class Meets the Requirements for Class Certification.**

In preliminarily approving a class action settlement, the Court must "also determine whether to certify the class for settlement purposes." *Jean-Pierre v. J&L Cable TV Servs., Inc.*, 538 F. Supp. 3d 208, 212 (D. Mass. 2021) (internal citation omitted). Courts have repeatedly found data breach classes meet the class certification requirements. *See, e.g.*, *Attias v. CareFirst, Inc.*, 346 F.R.D. 1 (D.D.C. 2024); *Savidge v. Pharm-Save, Inc.*, No. 3:27-cv-186, 2024 WL 1366832 (W.D. Ky. Mar. 29, 2024); *In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*, 341 F.R.D. 128 (D. Md. 2022). Indeed, data breach actions conform to the "policy at the very core of the class action mechanism . . . to overcome the problem that small recoveries do not provide the incentive

for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

In considering whether to certify a Settlement Class, courts look to Rule 23 of the Federal Rules of Civil Procedure. *See id.* at 620-21. Rule 23(a) creates four threshold requirements applicable to all class actions: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. Fed. R. Civ. P. 23(a)(1)-(4); *see also Amchem*, 521 U.S. at 613. Additionally, the proposed class must meet one of the requirements of Rule 23(b). *Id.* Where, as here, a Rule 23(b)(3) damages class is proposed, plaintiffs must show "the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are generally referred to as "predominance" and "superiority." Here, as described below, the Rule 23(a) and (b) requirements are satisfied, and the Court should certify the Settlement Class.

A.    **The Requirements of Rule 23(a) Are Satisfied.**

Rule 23(a) provides four prerequisites that any proposed class must meet. These prerequisites are: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a)(1)–(4). The proposed Settlement Class meets all four Rule 23(a) requirements.

i.    **Numerosity.**

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The threshold for establishing numerosity is low, and

'[c]lasses of 40 or more have been found to be sufficiently numerous.'" *Meaden*, 2023 WL 3529762, at *2 (citation omitted). Here, the Settlement Class is so numerous that joinder is impracticable. The Settlement Class consists of approximately 1.225 million individuals, far surpassing the threshold number of 40. Moreover, all Settlement Class Members have already been identified by Nuance and/or its data custodians in their investigation of the Security Incident and the issuance of notice to affected individuals. *See Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 127-28 (S.D.N.Y. 2011) (holding defendants' business records may be used to ascertain class members). Numerosity is met here.

### ii.    Commonality.

Under Rule 23(a)(2), the Settlement Class must share common questions of law or fact. The commonality requirement is not demanding. Rather, it is a "low bar" and may be satisfied by a single common question of fact or law. *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir. 2008). Commonality is met where the claims "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 347 (2011).

Here, the Settlement Class shares numerous common questions of law and fact, and the answers to those common questions will have a class-wide effect. To start, Plaintiffs' and Settlement Class Members' Personal Information were transferred by Nuance in the regular course of Defendant's business. As a result of the Security Incident and Nuance's use of the MOVEit Transfer software, each Settlement Class Member's Personal Information was compromised by cybercriminals. Consequently, Plaintiffs and Settlement Class Members all suffered similar injuries, including, *inter alia*: the risk of harm from the misuse of their data; the loss of privacy from cybercriminals compromising their Personal Information; and out-of-pocket costs and lost

-19-

time spent investigating the Security Incident and mitigating the risk of future misuse of their Personal Information.

While only one common question is sufficient to satisfy commonality, here, Plaintiffs' and Settlement Class Members' claims present numerous additional common issues, including but are not limited to:

- Whether Nuance owed Plaintiffs and the Settlement Class a duty to reasonably secure their Personal Information;

- Whether Nuance breached its duty by failing to implement and maintain adequate data security, and failing to protect data transferred via MOVEit Transfer;

- Whether Nuance's breach of duty caused harm to Plaintiffs and the Settlement Class, including the compromise of their Personal Information;

- Whether Plaintiffs and the Settlement Class suffered harm due to the compromise and potential misuse of their Personal Information; and

- Whether Plaintiffs' and Settlement Class Members' damages are reasonably quantifiable.

The existence of these common legal questions and the overwhelmingly similar factual issues presented by Settlement Class Members' claims satisfy commonality here.

### iii.     Typicality.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "To establish typicality, the plaintiffs need only demonstrate that 'the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *M3 Power*, 270 F.R.D. at 54. "The claims of the class representative and the class overall must share essential characteristics, but they need not be precisely identical." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 338 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015).

-20-

Here, Plaintiffs' claims are typical of those of Settlement Class Members because they were all impacted by the same Security Incident—a data incident in which their Personal Information was accessed by an unauthorized third party—and involve the same overarching legal theories, including theories that Nuance failed to safeguard their Personal Information. *See Abubaker v. Dominion Dental USA, Inc.*, No. 119CV01050LMBMSN, 2021 WL 6750844, at *3 (E.D. Va. Nov. 19, 2021) (typicality satisfied where plaintiffs and settlement class members were subject to a data breach and were alleged to have suffered the same type of injuries). Plaintiffs' legal theories do not conflict with those of absentee Settlement Class Members, and Plaintiffs have and will continue to represent the interests of all Settlement Class Members fairly, because such interests parallel their own. As such, Rule 23(a)(3)'s typicality requirement is satisfied.

### iv.    Adequacy.

Rule 23(a)(4) requires that the proposed class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The plaintiffs 'must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation.'" *M3 Power*, 270 F.R.D. at 55.

Here, Plaintiffs satisfy both requirements. First, Plaintiffs' interests align with, and are not adverse or antagonistic to, those of Settlement Class Members. Plaintiffs seek to hold Nuance accountable for, among other things, its failure to safeguard Plaintiffs' and Settlement Class Members' Personal Information. As such, Plaintiffs seek to hold Nuance accountable for the same alleged wrongdoing that caused the Settlement Class to suffer similar harm—the theft and risk of misuse of their Personal Information. Plaintiffs' interests therefore fully align with those of the Settlement Class. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 309-11 (N.D. Cal.

2018) (finding the adequacy requirement satisfied where all class members had their personal information compromised in the data breach and generally sought the same relief).

Second, Co-Lead Counsel are qualified, experienced, and competent in complex litigation, and have an established, successful track record in class litigation—including cases analogous to this one. Lynch Decl. ¶¶ 3–4. Co-Lead Counsel and Plaintiffs have diligently advanced the interests of the Settlement Class, including by investigating the Security Incident and resolving the cases against Nuance through Settlement. Accordingly, Rule 23(a)(4)'s adequacy requirement is satisfied.

## B.    The Settlement Class Meets the Requirements of Rule 23(b).

Under Rule 23(b)(3), a class action should be certified when the court finds that common questions of law or fact predominate over individual issues and a class action would be superior to other methods of resolving the controversy. The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 594, 623. "The superiority inquiry [ ] ensures that litigation by class action will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. CV 14-MD-02503, 2017 WL 4621777, at *21 (D. Mass. Oct. 16, 2017) (citation omitted). Here, the Settlement Class readily meets both requirements.

### i.    Common Issues Predominate Over Individual Issues.

A Rule 23(b)(3) settlement class must show that common questions "predominate over any questions affecting only individual [class] members." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,* 568 U.S. 455, 459 (2013). Predominance "does not require that each element of the claims [be] susceptible to class-wide proof" but only that "the individualized questions . . . [do] not

'overwhelm' the common ones." *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 325 F.R.D. 529, 537 (D. Mass. 2017) (citation omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

Here, common issues predominate over individual issues because each Settlement Class Member would rely on common factual evidence to establish Nuance's liability. Each Settlement Class Member's claim centers on Nuance's allegedly inadequate data security and Nuance's use of MOVEit Transfer which, Plaintiffs allege, Nuance knew or should have known could result in a data breach and harm to Plaintiffs and the Settlement Class. Despite that knowledge, Plaintiffs contend Nuance knowingly used inadequate data security. Proof of those facts would establish Nuance's duty and breach of duty on a class-wide basis, and proof of those facts depends exclusively on Nuance's knowledge and actions. Thus, those elements of each Settlement Class Member's claim are resolvable in a "single stroke" and do not depend on any individualized issue. *Dukes*, 564 U.S. at 347; *see also In re Brinker Data Incident Litig.*, 3:18-cv-0686, 2021 WL 1405508, at *8 (M.D. Fla. Apr. 14, 2021) (granting class certification because common questions predominated, including "whether [defendant] had a duty to protect customer data, whether [defendant] knew or should have known its data systems were susceptible, and whether [defendant] failed to implement adequate data security measures"), *vacated in part sub nom. Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023).

Additionally, common issues concerning causation and damages predominate. Whether Nuance's alleged misconduct, in part, caused the Security Incident and the resulting theft of

Plaintiffs' and Settlement Class Members' data will depend on common evidence comparing Progress's and Nuance's knowledge and acts and their contribution to the breach. Further, as other courts have recognized, Plaintiffs can establish damages on a class-wide basis using models to measure the diminished value of the stolen data and the lost time and effort incurred responding to the breach. *See, e.g.*, *Green-Cooper*, 73 F.4th at 889–90 (approving plaintiffs' method for measuring class damages due to a data breach). Although each individual Settlement Class Member may have some individualized damages, those individual damages generally do not defeat class certification. *Corra v. ACTS Ret. Servs., Inc.*, No. CV 22-2917, 2024 WL 22075, at \*5 (E.D. Pa. Jan. 2, 2024) ("Although there may be slight differences among class members regarding degree of damages or the exact type of injury suffered (e.g., breach of sensitive financial information or breach of health data), none of these differences would preclude resolution on a class-wide basis."). For these reasons, predominance is satisfied.

### ii.    A Class Action is a Superior Device for Adjudicating the Nuance Actions.

The superiority criterion requires that class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In evaluating superiority, courts consider: (1) the interests of class members in individually litigating separate actions, (2) the extent and nature of existing litigation, (3) the desirability of concentrating the litigation of the claims in one forum, and (4) the difficulty of managing a class action. *Id.* "The superiority inquiry thus ensures that litigation by class action will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *In re Solodyn*, 2017 WL 4621777, at \*21 (citation omitted). Where a "large number of potential plaintiffs" share common claims, "certifying the class will allow a more efficient adjudication of the controversy

than individual adjudications would." *Roberts v. Source for Pub. Data*, No. 08-CV-04167-NKL, 2009 WL 3837502, at *7 (W.D. Mo. Nov. 17, 2009).

Here, class resolution is superior to other available means for the fair and efficient adjudication of the claims asserted against Nuance. First, the potential damages suffered by the approximately 1.225 million Settlement Class Members are relatively low dollar amounts and would be uneconomical to pursue on an individual basis given the burden and expense of prosecuting individual claims. *In re Anthem*, 327 F.R.D. at 315 (superiority satisfied in data breach settlement where the "the amount at stake for individual Settlement Class Members is too small to bear the risks and costs of litigating a separate action."). Second, there is little doubt that resolving all Settlement Class Members' claims jointly, particularly through a class-wide settlement negotiated on their behalf by counsel well-versed in class action litigation, is superior to a series of individual lawsuits and promotes judicial economy. *See In re Cap. One*, 2022 WL 18107626, at *5 (recognizing that litigating the claims of millions of individuals impacted by a data breach would be inefficient).

For these reasons, the Settlement Class satisfies the requirements of Rule 23(a) and (b)(3), and Plaintiffs respectfully request that the Court preliminarily certify the Settlement Class for purposes of Settlement.

## IV.    The Court Should Approve the Proposed Notice Plan for Direct Notice to Be Issued to the Settlement Class.

Upon preliminary approval and certification of a settlement class, Rule 23 requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified with reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "To satisfy due process, the notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections." *Hill*, 2015 WL 127728, at *14 (internal quotations omitted). "Robust efforts to reach as many class members as practically possible is required." *Piro v. Exergen Corp.*, No. 15-cv-11834, 2016 WL 1255630, at *6 (D. Mass. Mar. 29, 2016). Where possible, notice should be afforded to class members directly. *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-cv-1998, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 218 (D. Me. 2003) (holding that "individualized notice by first-class mail ordinarily satisfies the requirement that class members receive the best notice practicable under the circumstances").

Additionally, the notice must fully inform settlement class members about the action, the settlement and its benefits, each settlement class member's options to file a claim, opt out of the settlement, or object to it, and the means and deadline to take action. *See Lapan v. Dick's Sporting Goods, Inc.*, No. 1:13-cv-11390, 2015 WL 8665204, at *3 (D. Mass. Dec. 11, 2015) (citing Fed. R. Civ. P. 23(c)(2)(B)); *Compact Disc*, 216 F.R.D. at 218–19 (approving a class notice that "described among other things, the class, the litigation, the proposed settlement, how an affected consumer could opt-out or object, and the funds for costs, attorney fees and incentive awards" and "directed individuals seeking additional information to a website address and provided counsel's address for mailing or delivering written comments").

Here, the Notice Plan satisfies the requirements of Rule 23 and due process. First, the Notice Plan calls for direct notice to Settlement Class Members. A.B. Data Decl. ¶¶ 9–14. Nuance already identified Settlement Class Members when it investigated the Security Incident and issued notice of the breach. Under the Notice Plan, Nuance will provide contact information it has for Settlement Class Members to the A.B. Data. SAR § 9.1. The Settlement Administrator will then use this information to issue notice directly via email, or, if no email is available, by U.S. mail.

-26-

A.B. Data Decl. ¶¶ 10–14. This type of direct notice plan is the best practicable notice under Rule 23. Fed. R. Civ. P. 23(c)(2)(B); A.B. Data Decl. ¶ 31.

Second, the notices contain sufficient information to apprise recipients of the Settlement, and of their right to submit a claim, opt out of the Settlement and Settlement Class, or object to the Settlement. *Compact Disc*, 216 F.R.D. at 218–19. Specifically, the Long Form Notice describes the Settlement Class, the nature of the case, terms of the Settlement, notifies Settlement Class Members of their rights to submit a claim, opt out of the Settlement, or object to it, and provides Settlement Class Members with opportunities to obtain more information, including through the Settlement Website. *See* SAR, Ex. E, F (the long form and short form notice); A.B. Data Decl. ¶ 16.

## V.    The Court Should Set the Below Settlement Deadlines

To facilitate the implementation of the Settlement, the issuance of notice, and the opportunity for Settlement Class Members to submit a claim, opt out of the Settlement, or file an objection, the Court should issue an Order setting forth the below deadlines:

| Event | Deadline |
|---|---|
| Nuance Provides Class List to Settlement Administrator | 10 days following entry of this Order |
| Notice Deadline | TBD (30 days after Nuance's provision of the Class List to the Settlement Administrator) |
| Objection and Opt-Out Deadlines | TBD (60 days after Notice Deadline) |
| Claim Deadline | TBD (90 days after Notice Deadline) |
| Motion for Attorneys' Fees and Expenses and Service Awards | TBD (21 days prior to the Objection and Opt-Out Deadlines) |
| Motion for Final Approval | TBD (30 days prior to the Final Approval Hearing) |

| Event | Deadline |
|-------|----------|
| Objections, if any, to Motion for Final Approval | TBD (17 days prior to the Final Approval Hearing) |
| Reply in Support of Motion for Final Approval | TBD (10 days prior to the Final Approval Hearing) |
| Final Approval Hearing | TBD (at least 150 days after Preliminary Approval) |

**CONCLUSION**

For the reasons provided above, the Court should preliminarily approve the Settlement, certify the Settlement Class, approve the Notice Plan, and set the relevant Settlement deadlines.

Dated: August 14, 2025

Respectfully submitted,

By: */s/ Kristen A. Johnson*
    Kristen A. Johnson (BBO# 667261)
HAGENS BERMAN SOBOL SHAPIRO LLP
1 Faneuil Hall Square, 5th Fl.
Boston, MA 02109
Tel:  (617) 482-3700
Fax:  (617) 482-3003
kristenj@hbsslaw.com

*Liaison & Coordinating Counsel*

By: */s/ E. Michelle Drake*
    E. Michelle Drake
BERGER MONTAGUE, PC
1229 Tyler St., NE, Ste. 205
Minneapolis, MN 55413
Tel:  (612) 594-5933
Fax:  (612) 584-4470
emdrake@bm.net

By:  */s/ Gary F. Lynch*
    Gary F. Lynch
LYNCH CARPENTER, LLP
1133 Penn Ave., 5th Fl.
Pittsburgh, PA 15222
Tel:  (412) 322-9243
Fax:  (412) 231-0246
Gary@lcllp.com

By:  */s/ Douglas J. McNamara*
    Douglas J. McNamara
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, 8th Fl.
Washington, DC  20005
Tel:  (202) 408-4600
dmcnamara@cohenmilstein.com

By:  */s/ Karen H. Riebel*
    Karen H. Riebel
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Ave. S., Ste. 2200
Minneapolis, MN  55401
Tel:  (612) 339-6900
Fax:  (612) 612-339-0981
khriebel@locklaw.com

By:  */s/ Charles E. Schaffer*
    Charles E. Schaffer
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Ste. 500
Philadelphia, PA  19106
Tel:  (215) 592-1500
Fax:  (215) 592-4663
cshaffer@lfsblaw.com

*Lead Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this date, the foregoing document was filed electronically via the Court's CM/ECF system, which will send notice of the filing to all counsel of record.

Dated: August 14, 2025                    _/s/ Kristen A. Johnson_
                                           Kristen A. Johnson (BBO# 667261)

011175-35/3249822 V1